## M. WELLS *v.* ROACH, et al.

That clause of the Act of March 16th, 1842, which forbids suit to be instituted against the securities on certain bonds "until the necessary steps have been taken to enforce payment against the principal," must not be so construed as to deprive the creditor of recourse against the surety until the insolvent estate of the principal to the bond has been liquidated. In a case where an execution cannot be taken out against the property of the debtor, where his succession is under administration, the creditor may proceed against the surety.

APPEAL from the District Court of Caddo, *Spofford*, J.

*Crain & Nutt*, for plaintiff and appellant:

The issue in this case, and the only issue, is: Has *Mary Wells* exhausted all legal remedies against the succession of *J. W. Hardwick?* If she has not, she cannot for the present, pursue the defendant, *Watson*. See Act, 16th March, 1842, p. 300. *Canal Bank* v. *Brown,* 4 A. R. 545. *Kemper,* et al. v. *Splane,* 4 A. R. 846. *Ross* v. *Chambiss,* 5 A. R. 158. *Wilson* v. *Murrel,* 6 R. R. 68; and the authorities cited. *Copley* v. *Richardson,* 4 A. R. 572. See *Alley* v. *Hawthorne,* 1 A. R. 122.

*Landrum,* for defendant :.

The case of *Berry A. Wilson* v. *John Murrel,* 6 R. 68., is not parallel to the case at bar. In the case cited the defendant was only liable as administrator, and the steps, pointed to in articles 1055, 1056 and 1057, were necessary to be taken for the purpose of ascertaining whether there were funds in the hands of the administrator which could be applied to the payment of the debt, and if there were that execution might be awarded against him personally for them, in case he refused to pay. But, in this case the defendant, *Hardwick,* is liable absolutely in his individual capacity, upon a final settlement of his administration of the succession of *Wells.* It is not the surety of *Hardwick's* curator that is sought to be made liable, but the surety of *Well's* curator. The death of *Hardwick* renders it impossible to get out a *fi. fa.* against him, and, notwithstanding the Act of 1842, this case cannot be distinguished from *Alley* v. *Hawthorne,* 1 A. 122, for in that case the Court recognized the necessity of a *fi. fa.* and return of *nulla bona,* and which indeed is required by the statutes of 1839, before proceeding on appeal bonds against the surety. See also succession of *Johnston,* 1 A. R. 76.

Suppose this decree had been rendered against *Hardwick* personally, during his life-time, and while it was being remanded to the Court below, *Hardwick* had died and his succession had been left vacant, and a curator had been appointed, would we have been compelled, even if the succession had been solvent, to have waited the delays of administration, particularly the three months delay required by article 1167 of the Civil Code, which is absolutely required of him. What necessary steps could be taken against the principal? How then can the death of *Hardwick* at an earlier date, or how can the fact that his administration is opened when this suit is brought, alter the case ?

The whole history of the settlement of successions in Louisiana evinces the absurdity of such a notion. In the case decided in 6th R. the creditor perhaps was not entitled to the payment of his whole debt. The estate was not closed up, and it might have turned out insolvent. It was necessary, therefore, to compel the administrator to show the condition of the estate, so that it might be known what the surety was liable for. But in this case the amount for which the surety was liable is fixed beyond doubt, and if the facts of the case prevent the necessary steps being taken, he is immediately liable. If *Hardwick* was living we should have to get out a *fi. fa.* and a return of no property; we could not be required to do more—his death prevents that. Besides, the decision in the case cited was no doubt based upon the same course of reasoning which ·resulted in the decision in *Chalarou's* case, 9 L. R. 227, which I think is very successfully refuted in the able decision of *Alley* v. *Hawthorne,* pronounced by *Chief Justice Eustis,* already cited.

Besides, we should consider the reason which prompted the Legislature to make the enactment according to the 17th and 18th articles of the C. C.

WELLS
*v.*
ROACH.

Now, the very summary remedy which was heretofore given to creditors of successions against the surety of the curator, as evidenced by the decision of *Parmele* v. *Brashear*, 16 L. R. 72, was, perhaps, thought to be a hardship on sureties—but the Legislature never could have intended to retard the final settlement of the succession.

SPOFFORD, J. *Bannister Wells* removing with his negroes from Mississippi to the West, died at the house of *J. W. Hardwick*, in the parish of Caddo, early in 1849.

*Hardwick* procured the appointment of curator to his succession, and administered it for upwards of two years as a vacant succession. *F. R. Roach* and *Alfred Harris*, (the latter herein represented by Mrs. *Watson*,) were sureties on his bond as curator.

The present plaintiff, *Mary Wells*, was recognized as the instituted heir of *Bannister Wells*, her husband, who had voluntarily separated from her in Mississippi. After many delays she succeeded in getting possession of the property left in the hands of *Hardwick*. He filed the final account of his administration, which embraced very large charges, some of them for medical services rendered by himself to the slaves belonging to the succession. *Mary Wells* opposed the account, denying the correctness of many of the charges, and alleging that *Hardwick* was liable for the hire of the slaves which he had employed in his own service during his curatorship, without accounting in full for their wages.

The trial of this opposition resulted in a judgment in the District Court which liquidated the balance due to *Mary Wells* by *J. W. Hardwick*, upon a final settlement of his account of administration, at the sum of $1080 92, for which judgment was rendered in her favor against him with five per cent. interest from the 14th April, 1852, the date of the judgment.

*Hardwick* appealed to the Supreme Court from the judgment, and *F. R. Roach* became his surety on a suspensive appeal bond.

On the 18th April, 1853, the judgment was finally affirmed by the Supreme Court, with costs, and *J. W. Hardwick* having died pending the appeal, it was ordered that the decree be binding upon his succession, represented by *David J. Hooks*, curator.

On the 30th December, 1853, *Mary Wells* took a rule on *Hooks*, curator of *Hardwick's* succession, to show cause why this judgment should not be paid immediately.

Upon a hearing *Hooks* proved that all the property of *Hardwick's* succession had been sold, and would not realize for one or two years more than enough to pay the privileged debts, and then would not pay more than from twenty-five to forty cents on the dollar.

Whereupon the rule was discharged.

*Mary Wells* then instituted this suit against *F. R. Roach*, surety on the appeal bond in the suit above alluded to, and against *F. R. Roach* and the representative of *Alfred Harris*, sureties on the official bond of *Hardwick*, as curator of the succession of *B. Wells*, to recover of them, *in solido*, the amount of her final judgment against *Hardwick*.

There was judgment against *Roach* as surety on the appeal bond, and against *Roach* and Mrs. *Watson* jointly, as securities on the curator's bond.

The defendants have appealed.

The sole matter pleaded in defence of the action, is the statute of March 16, 1842, § 6, (Session Acts p. 302,) which provided : "That the Courts of Pro-

bate shall have exclusive cognizance of all suits or actions against sureties on the bonds of appeal, and all others which they are bound by law to receive or exact from appellants and administrators, tutors, curators and testamentary executors generally; and no such suit shall be instituted against the security, until the necessary steps have been taken to enforce payment against the principal."

Thus, the only question presented in the pleadings in the brief of counsel is whether "the necessary steps have been taken by the plaintiff to enforce the payment of her judgment against the estate of *Hardwick*, the former curator of the succession of *Bannister Wells*."

From an inspection of the proceedings and the evidence it is conclusively shown, as before stated, that a judgment for a liquidated amount, viz: that claimed in the petition, was obtained against *Hardwick*, and that while an appeal was pending from said judgment *Hardwick* died. The judgment having been affirmed against his representatives, the plaintiff, in our opinion did take all necessary steps to enforce payment against the principal, by taking a rule upon the representatives of *Hardwick's* succession, to show cause why the judgment should not be paid. The action of the Court upon this proceeding, in our opinion, rendered any other "step" unnecessary in order to enable the plaintiff to proceed at once against the sureties of *Hardwick*, both on his bond as curator and appellant. The rule was dismissed, it having been shown that all the property of *Hardwick's* estate had been sold, and that not more than an amount sufficient to pay the privileged debts would be realized for one or two years, and then only from twenty-five to forty cents on the dollar.

The case comes clearly within the scope and application of the principle laid down in *Alley* v. *Hawthorne*, 1st An. p. 126. Adopting the language of this decision: " Where an execution cannot be lawfully taken out against the property of the debtor, (as in the case at bar,) where his succession is under administration, the law will not turn the judgment creditor over to a labyrinth of creditors, to await the tardy liquidation of a litigated or insolvent succession." He has done all that he can do, and all that he is bound to do, unless we hold that he can have no recourse against the defendant until the insolvent estate of *Hardwick* has been finally liquidated. This would not in our opinion be a reasonable construction of the law regulating the right and liabilities of this class of sureties.

It is ordered that the judgment of the District Court be affirmed with costs, and that the decree be also binding upon the succession of *F. R. Roach*, herein represented by *Benjamin L. Hodge*, the executor of the deceased.